Do you have any support? Let's just wait. Let's wait and see how it's set up here. Okay, I think whenever you're ready. Thank you very much. May it please the court, Mr. Canitello, appearing before the appellant, David M. Curley, Sr. In my experience, Your Honor, in the period before the court, I've had the frequent experience of being asked the question, counsel, give me your best case. And in this case, my best case is Corvella. Your Honor, you're going to get to your best case because I have a wide search regarding your briefing in this case. To the degree that it's going to be my first question to you, you've cited repeatedly to the district court proceedings, instead of providing an adequate excerpt of record on appeal. And I'm not sure I understand that even after you were put on notice by Wells Fargo that you needed to put in an adequate excerpt of record. Instead, you just continued to cite to the district court proceedings. This is a direct violation of our circuit rules, and I'm not quite sure I understand, so I'd like to hear an explanation, first and foremost, before you get to your best authority. Your Honor, the complaint that we didn't comply with the court's warranted excerpts of record. Can you speak into the microphone, please? Yes. The complaint that we did not comply with the circuit rule was addressed in a reply brief extensively. We did file a reply pointing out why it was that we should be permitted, in the circumstances of this case, to cite with regard to every factual assertion to the court's record. In page 9. Sir, why didn't you just submit an adequate appropriate excerpt of record? I don't understand. The problem was the numberlessness of the censure record. That happens all the time here, but instead, I mean we just let everybody just cite to the district court docket. That would not, it would be unmanageable for us to do that. It's the whole purpose. We allow people to submit excerpts of record. It was really an interesting matter in which it was almost kind of like, oh, well, we don't have to do that. I'm just going to go ahead and proceed with the district, citing to the district court docket. So I just have a lot of issues with how this was presented.  This issue that we didn't comply with the circuit rule. Do you acknowledge that you did violate the circuit rule? I don't think we acknowledged that. We said under the circumstances, Your Honor, we think we gave as little merit for this court to decide this video as could have been done. What could have been done would have been to submit an excerpt of record citing exactly to the testimony and everything else. It was a 75-page excerpt of record. I didn't even want to say there were any references to what actually happened. And we have to look through the district court's docket. We think we made it to a point of no excuse. Technically, we violated the circuit rule. And I was fully prepared to have the appeal dispensed, if that's the way the court felt. I think there was no excuse for it. It was just too much under the circumstances for us to put that kind of a record together. Are you saying you did dispense it? Primarily. I have a man here who lost his home for years. And he had no money, okay? I can say that with absolute confidence. And that was the prior Eureka's issue. Eric? Before you proceed, did you file a motion for reconsideration after you got an adverse ruling from the court below? You just went directly to appeal, but is there a special reason why you didn't? There were two motions for summary judgment. First motion, the court denied it, along with other things. And then immediately after that, there was a second motion filed. First, obviously, they actually granted a substantial part of the motion, and the denied portion of the motion, I believe, has to do with a contract issue. That's more correct, isn't it? In the first order, the district court granted  eliminating a number of the claims, but left essentially the contract claim that we're talking about. The case that we're on today is? Right. I think it's been a second motion. Okay. Back to Corvello, Your Honor, if I may. In my understanding, Corvello is not dispositive of this case by any means. But Corvello does lay the framework to appeal. And the way we looked at it, we had a situation where we offered evidence of a, two items. The first item was a 4506-T, Internal Revenue Service form. And we went into that the day after it was supposed to be submitted, right? I'm sorry. It had to span to a declaration the day after the declaration was supposed to be submitted. Is that what you're talking about? No, no. The district court had the record. You didn't point it out. The rules require that you point. The district court doesn't have to go through every part of the record and look for it, and you were supposed to point that out. But you did do that, right? We did. It was the day late. 137-1. The answer to the question is it was a day late, isn't it? Wasn't it? It was a day late. You filed it a day late. I don't think so. What happened was there were the matter was rendered on the 20th, I think, 2nd of July, excuse me, July 15th. If the document you rely on so much says that it was a day late, then why wouldn't we see it as a day late? Well, the reason it wouldn't be a day late, the matter with this document was submitted in November. I know, but you were supposed to highlight it. It was the whole question. It was the main issue that you all were arguing, and you were supposed to highlight it for the district court to show, and it was supposed to be a critical piece of evidence, even from your own account. Indeed, we had. But it was the time you came out of the district courts and filed it by this date, and you didn't file it by that date. You filed it a day late. I disagree, Your Honor. I don't know if there was any time limit on 45-016. The reason being, we have the 0-9 dash to the supplemental directive, which puts no time limit on the 45-016. I have it here. The supplemental directive, in relevant part, reads, assigned IRS form 45-016, request for transcript of tax return. That's all it says. There's nothing there that says you have to file this form at a specific time. The TPP agreement tried to push us in. I don't want to go back this much, but there was a three-day time period that the court allowed you to submit after Wells Fargo submitted their material. You missed that by one day. We understand that you're a guest. We understand that you're relying on the fact that it already existed in documents that Wells Fargo had. That's what was argued, I believe, that it was already in the record. So what happened is we had a very complete declaration that we filed back in. This was in the first motion for summary judgment, and it's in document 60-1. In that declaration, Mr. Kirby, we identified some very critical evidence. The first item was in Exhibit C to 60-1, and Exhibit C says all the documents that were submitted are in that particular piece of evidence. It's got Wells Fargo's base stamp on it. It's completely authenticated, and every one of the documents is identified here. I'm not going to go reading it, but the principle of interest calculation was done, the fulfillment of the complete package, stipulated agreement validated. You can see all the items. First payment received, second payment received, third payment received. Extended trial period. And then at the end, it says initial package received. Okay. So the initial package included all of our financial records, and I think my client respectfully did a good job. He had no counsel at the time, but at the time that he did this, I think he did a good job. And so it had Wells Fargo. It concedes in its document 0981. That was the Wells Fargo document. Okay. The next thing we show in this report is the Exhibit F to 60-1, and Exhibit F identifies everything that they wanted. Valid 4506G exhibit there. Valid, it's in there in the middle of it. It's 0092. It's the Wells Fargo stamp. It's the profit loss. Valid case. Everything that they wanted, or had it right in it in that exhibit. All data in-house complete. Nothing could be more clear. And then we go to the real critical piece of evidence that the district judge had a problem with, for the reason that he felt was an accommodation. And he also felt that we didn't have evidence explaining the system that Wells Fargo used in keeping control of the document inputs. And what it is, very simply, is they have a system where everything that's spent is recorded in what they call an LMT, which is a computer that allows them to pull out everything that's been done. Now here, on the 16th of July, 2010, four days before the sale, Abe, Mr. Burwell, notes, all doubts received, yes. In other words, that on this record, we certainly would have been entitled to go to the jury on evidence that we could have prevailed if the jury agreed that there was a sufficient showing. They could have given us some re-judgment. Or, rather, we could have got a verdict. Do you want to reserve the minutes of time? Yes, sir. Thank you. Three minutes. And one minute and 55 seconds. One minute and 55 seconds. Okay. Good morning. May I please the court? My name is John Ives. I'm here on behalf of defendants Wells Fargo and Freddie Mac. One sort of unusual thing about this case is that two different trial court judges have looked at the evidence here, and both have come to the same conclusions.  Thank you, sir. Court. So, again, this is an unusual case where we have two different trial judges who have looked at the evidence in this case and come to the same result on summary judgment. They've both concluded that Mr. Krug simply didn't provide the documents that were required under the TPP. Is the critical finding that the controlling order language on page 14 and a number of other pages in which the court says below, Curley did not submit an R.S. 4506-T form, failed to fulfill under the TPP? That's exactly right. That is the critical finding. That is the critical finding, and, unfortunately, he's a little firm on the summary judgment based on that alone. But he did submit it. Eventually, although some dispute about that seems like a day late, would that have made a critical difference? Not really a day late. He was required to fax all these documents by February 1st of 2010. If you draw an inference, the fax most favorable to Mr. Curley, he's claiming he submitted those documents in July of 2010, more than five months late, and more than a month after Wells Fargo had already denied his application. So you take a look at the TPP. It clearly says in a double-dip response, you need all these documents by February 10th. It highlights time is of the essence. There is simply no dispute in his case that he ever submitted those documents on time. He basically relies on two pieces of evidence. One, his own declaration, which never says, I submitted this document, doesn't attach a copy of the form to this declaration. All it says is, well, look, Wells Fargo's lost litigation notes saying that they received all these documents. I'm sorry. I just want to be clear. Under the district court's reasoning, based on its prior orders, would the IRS form that Mr. Curley submitted here, this TPP, be adequate sufficient to create a genuine district material fact? I understand the court practice you're referring to is original 2006. Yes, that's a very funny piece of evidence. First of all, we've got to make clear that no point in the district court did Curley ever raise this argument, and there's good reason why he didn't. That's because that 2006 that he submitted with his original loan application only authorized Wells Fargo to request his tax returns for 03, 04, and 05. But if your document, your act now document that you just referred to, that step two has please let us know, deadline February 1, 2010, and then it says act now, it doesn't say that it has to deal with tax returns for the last preceding three years. It says assign a dated copy of IRS form 45016, and you have to assign a dated copy of the IRS form 45016 because you have to say things in it, and it's got Wells Fargo. He submitted this with his original loan application. How do you know that, of course, the evidence that he submitted didn't just resubmit it with the other document? Of course, the evidence he didn't resubmit the same document because that would be sufficient if he just submitted the same document, right? No, absolutely not. If you take a look at what he submitted, If you take a look at what he submitted in 2006, it authorized Wells Fargo to only request 03, 04, and 05. That's exactly right. But your form, your contract doesn't say you signed the contract, right? Your client did. No, these are Treasury Department regulations. No, you used their contract. You used their form. First, I think we need to highlight the fact that no point in the district court was this argument ever raised. This is a brand-new factual argument, and it's, quite frankly, a ridiculous argument because you only can request. It is not a continuing authorization. It did not give Wells Fargo. No, I understand that. I understand that. So if that union is for one with a continuing right, then whoever you adopted this form, and you're saying comply with this form, that was good enough, right? Absolutely not. What we need in 2010 is fair file. Is that what you need? What did you require in your documentation? We required a recent 4506E. You have the form in front of you. It doesn't say recent. I'm just a little bit stunned that this is not even a plausible argument because what happens here is a borrower calls in. Excuse me for interrupting the night, but you see this is not a plausible argument. You mean what? That the 2006 document wouldn't satisfy what you had asked for? Absolutely. And to be clear, what was going on in 2010, a borrower calls in over the telephone, and they can see verbally what their income is. What the loan servicer needs is documents that will show, will verify their income that they're complying on that 2010 application. This is just to get the foreclosure proceeding to stop. It's not saying I'm going to give you a loan modification. It's just to stop the foreclosure proceeding, right? No, this is part of the loan modification application itself. This is why you say over here in your documents on the next page, the trial period plan is the first step. Once we are able to confirm your income and eligibility to the program, we will finalize your modification terms. You say that, but you say that once you've finished the successful and completed trial period, I think there's a statement in here that you will not foreclose. If you go to the next page, question, will the foreclosure occur if I participate in the home portable modification program? As long as you comply with the terms of the trial period plan, we will not start a foreclosure proceeding or conduct a foreclosure sale if foreclosure proceedings have started. So you're not going to do that, right? Absolutely not. So it's a first step. So the first step is for him to verify the income that he verbally stated over the telephone. And that was for one year? This is for 2010. Part of what's so ridiculous and so implausible about this is he's trying to claim that the IRS 456 that he supplied with his original loan application in 2006, which only gave Wells Fargo authorization to request 03, 04, and 05, that he didn't give Wells Fargo the right to request his 2007 tax form that he relies on. Well, he submitted that, right? Yes, he submitted that. He submitted that, and that was the most recent one in his possession, right? I think you're confusing two issues. You're confusing the most recent tax form issue with the 4506D. Those are two independent grounds as to why he did not set up comply with the TPP. So the 4506D, the loan servicer needs that to go to the IRS and get his authorization to get things in the past. So you submit something in 2006, you're telling the IRS, give him my 03, 03, 04, 05 time to rewrite the form. Absolutely not. First of all, this is not, I think you might be mixing and matching two separate arguments that we've made. We've always made two arguments. He hasn't provided the 4506D. He hasn't provided his most recent tax return issue to the district courts. I'm saddened to take the opinion that they didn't really comply with the most recent one. Exactly. Those are separate issues. The 4506D, I said it would not be the most recent tax return. Yes, those are two separate issues. So you're focused on the 4506D? Yes, I'm right now on the 4506D. So the situation regarding the 4506D is that you allege that Mr. Curry failed to provide you or your client with that D document, which was critical or important. Is that correct? Absolutely. Absolutely. Okay. And it was critical and important, but why don't you tell me why? Number one, he did not provide this with his local application application. And in those five months when he had the opportunity to do so or was supposed to do so. He did not do it by February 1st. There was a hard deadline for him to do this. And then the district court, right before it ruled, right, said, I don't, you know, your document, well Sparkle says more important is not here. You need to present it. Is that right? When he's raising for the first time on appeal, it's a 20-06-4506D, which has absolutely no bearing on his 2010 local application. What's the document that helped me? He needs to provide a reason. He needs to send someone right now saying, I didn't give you authorization for the prior years, and I'm not going to give it back to you. There was a document that was ultimately submitted that you claim was late. Not just late, five months late. What document was that in here? That was the, I don't know exactly. The 4506D, was it the 4506D? I don't know exactly what he provided on July 16, 2010. But it doesn't matter, because his deadline was February 1, 2010. The application had already been denied in June of 2010. This 2006, I'm very concerned. I did court this under Ray Herrien, this 2006-45-06-D. That only meant that it is not a continuing authorization. You don't give that to your loan service and have the ability to change the request IRS form. I understand this, but what you needed in 2010 was the information, the most recent information. You needed the authorization to get the tax. I did not. So what I would ask is, what is the request that you made that was noncompliant for that information? The 4506D. He did not provide that. And that's until July. He didn't provide the form, the T4 item. When did you look in the record to see where you acquired it? You look at the TPP itself. I believe the TPP itself, specifically, I think it was item four of five different items. It specifically says, send us a 4506D. It looks like that form was the one that was the district court referred to as being filed a day late. Not a day late. Okay. Five and a half months late. After the starting of July. So I'm afraid that this is a Ray Herrien that's confusing the court. Well, you referenced the court. We've gone over the court on the instance. When you look back at the courts opinion, which is not the appeal opinion, but is it the law of the case or the case? Is it the law of the case? Not ours, obviously. We're talking about the opinion of the Northern District of California, in which they said, contrary to the defendant's position, the court finds disputed issues of a true effect regarding Curley's performance with the TPP. The court does not accept the defendant's tax return argument because, as discussed here, the TPP required only that Curley submit his most recent tax file tax return. And Curley identified evidence that he sent Wells Fargo a copy of his 2007 tax return. So this is the district court, right? Exactly. But I think what the court did is mix and match. These are two entirely separate issues, the 4506D and the most recent tax return. Sure. So he's never presented any evidence that he tried to submit to them. But the 2007 return was sufficient, right? Because it's the last line of his possession. The district court ruled that it was. And that's the law. We didn't do anything like that. So it's the last thing before us now, right? No. We think that the court did revisit this issue because it is a separate issue. Another reason why he did. You didn't appeal this one? We're not required to. He made this argument that we were required to cross-appeal. That is absolutely incorrect. We are not required to cross-appeal. We are free to take issue with a district court ruling. We're arguably in favor of that judgment, even if the district court ruled against us below. We cited multiple authorities for that. That's also a separate law. So that's basically not an issue. Just very quickly, I just want to make sure the court is distinct. There's two different reasons why we always argue that he didn't provide the TPP, the 45016, the most recently. So let's just stick with one and not confuse the two. Let's just do that 45016. He's never presented any evidence that he provided that time. Thank you, Your Honor. Thank you. Thank you. It seems to me, Your Honor, that this case resolves on the supplemental directive 0901 as to what it says with regard to this 45016. And this was the custodian of records at Wells Fargo submitted this document. And it says, after a signed IRS form 45016T, request for transcript of tax return, this note, the note says, for both the salary or self-employed or unlike currently, if the board does not provide a signed copy of the most recent found federal income tax return, which the district court concluded that we did, if the compliance agent, that is an IRS compliance agent, requires the servicer must submit the form 45016 to the IRS. In other words, it's a pre-condition before you're required to seek the tax return from the IRS. The first condition is that you didn't get it. I got it. That's been established. Finding me. This is all taken by some 2010. What they need is what is more recent. Is that right? Why is the 45016 sufficient? No, 45016 is sufficient because there's no time limit. There's no regulation that says you have to submit this 45016T 30 days before you apply for a loan modification. There's no time constraint in the regulation. I'm reading from it right now. All they require is that you give it to the lender in the event that he needs to go get the tax return. In this case, he had the tax return. Thank you very much. Pleasure. Your arguments today, Mr. Conatello, Mr. Ives, The matter of David and Curley v. Wells Fargo, a company, is now submitted. We're ready to proceed on to the next case on the docket, which is R.A. Petal v. West McClenchon, post-unified school district.
judges: Schroeder, Murguia, McCalla